WO
JL

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tracy Elise,<br><br>Plaintiff,<br><br>v.<br><br>State of Arizona,<br><br>Defendant. | No.   CV 21-00020-PHX-MTL (JZB)<br><br><br>**ORDER** |

On January 4, 2021, Plaintiff Tracy Elise, who is not in custody, filed a pro se "Motion to Extend Time to File Initial Brief," an Application to Proceed In District Court Without Prepaying Fees or Costs, and a Motion to Allow Electronic Filing by Party Appearing Without an Attorney.  To facilitate consideration of the Motion to Extend Time, the Clerk of Court docketed it as a civil rights Complaint pursuant to 42 U.S.C. § 1983.  In a January 14, 2021 Order, the Court granted the Application to Proceed and the Motion to Allow Electronic Filing, denied the Motion to Extend Time, and gave Plaintiff 30 days to file a Complaint.

On February 16, 2021, Plaintiff filed a "Civil Rights Complaint Amending the Original Complaint" (the "Complaint") pursuant to 42 U.S.C. § 1983 (Doc. 6).  The Court will dismiss the Complaint and this action.

**I.      Statutory Screening of In Forma Pauperis Complaints**

Pursuant to 28 U.S.C. § 1915(e)(2), in a case in which a plaintiff has been granted in forma pauperis status, the Court shall dismiss the case " if the court determines that . . .

1   (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may

2   be granted; or (iii) seeks monetary relief against a defendant who is immune from such

3   relief."

4        A pleading must contain a "short and plain statement of the claim *showing* that the

5   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does

6   not demand detailed factual allegations, "it demands more than an unadorned, the-

7   defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

8   (2009). "Threadbare recitals of the elements of a cause of action, supported by mere

9   conclusory statements, do not suffice." *Id.*

10        "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

11   claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,

12   550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content

13   that allows the court to draw the reasonable inference that the defendant is liable for the

14   misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for

15   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

16   experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual

17   allegations may be consistent with a constitutional claim, a court must assess whether there

18   are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

19        But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

20   must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342

21   (9th Cir. 2010). A "complaint [filed by a pro se litigant] 'must be held to less stringent

22   standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551

23   U.S. 89, 94 (2007) (per curiam)).

24        If the Court determines that a pleading could be cured by the allegation of other

25   facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal

26   of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc).

27   Plaintiff's Complaint will be dismissed for failure to state a claim, without leave to amend

28   because the defects cannot be corrected.

## II.     Background

After a jury trial, Plaintiff was found guilty of multiple charges, including illegal control of an enterprise, keeping or residing in a house of prostitution, pandering, money laundering, and prostitution.  On May 19, 2016, the trial court sentenced Plaintiff to a 4.5-year term of imprisonment.  The Arizona Court of Appeals affirmed Plaintiff's convictions and sentences. *State v. Elise*, No. 1 CA-CR 16-0373, 2018 WL 5729354 (Ariz. Ct. App. Nov. 1, 2018).  The Arizona Supreme Court denied Plaintiff's petition for review.

Plaintiff was absolutely discharged from custody on February 27, 2019.  On October 18, 2019, Plaintiff filed a Notice of Post-Conviction Relief in the trial court.  On August 3, 2020, Plaintiff filed a Rule 32 Petition to Reopen Special Action, and on November 13, 2020, she filed a Rule 32 Petition for Special Action.  On November 23, 2020, the trial court summarily denied Plaintiff's Petition for Post-Conviction Relief.

## III.    Complaint

In her three-count Complaint, Plaintiff sues the State of Arizona, Maricopa County, former Maricopa County Attorney William Montgomery, Deputy County Attorney Edward Leiter, Deputy County Attorney Christopher Sammons, Court Commissioner Annielaurie Van Wie, Deputy Attorney Rebeckah Browder, the City of Phoenix, City of Phoenix Police Department Lieutenant James Gallagher, and Attorney David Anthony Cutrer.  Plaintiff asserts her rights to free speech, free exercise of religion, freedom from a "church/state defining what is sacred," and equal protection.  Plaintiff claims she was maliciously and selectively prosecuted.  She seeks monetary relief.

Plaintiff was part of the Oklevueha Native American Church, which "blessed and chartered" branches of the Arizona ONAC Mother Medicine Wheel and Sedona Temple, including the Phoenix Goddess Temple, The School of 1, the Sedona Goddess Temple/School of 1/Temple of 1 in Sedona, the Sedona School of Temple Arts, and Community Ashram spiritual homes."  Plaintiff, through these institutions, taught "a full spectrum 7-Chakra energy technology, which access bio-electricity through intention, attitude and ceremony."  Among other things, Plaintiff believes "The human body is the

sacred vessel for the eternal Soul. The holy body is an extension of and personal property of that same eternal soul"; "Sex is not just sacred before God and the church when married and pro-creative.  Sex is holy in many religious separate from childbearing"; "Tantra, Goddess and Indigenous healing traditions state that the human energy system is rebalanced and reset in many forms of intimate magnetic exchange.  Sex is not just for making babies; it has long been for enlightenment and ascension in nearly all of the world's esoteric traditions"; and "Sex Birth and Death are the three great rites given to every living creature by the Creator.  Personal Nova (orgasm) is part of healthy re-distribution of positive and negative life force energy, and is considered reunion with Source."

In Count I, Plaintiff alleges that in her criminal proceeding, she and her co-defendants "were denied use of temple language in defending their individual and collective criminal charges."  That is, Plaintiff asserts that the State "freely substituted statutory (convictable) language" for Plaintiff's "historically sacred glossary of terms in common use at Arizona Temple(s) and School(s)."  As a result, "Priestesses became 'prostitutes,'" "Healers became 'massage parlor employees' and 'investors in a house of ill repute," "Seekers/Initiates/Members/Authorized Card Holders became 'customers,'" "Alter of Light became 'massage table,'" "Holy Anointing and Chakra Energy Balancing became 'sexual conduct,'" and "Donation/Tithe/Offering of Support became 'fee.'"

Plaintiff claims Defendant Montgomery stated that Plaintiff's church was "no more a church than Cuba is Fantasy Island" and that her crimes were much worse than ordinary prostitution, since criminals were using a "fake" religion to cover their illegal enterprise. Plaintiff alleges that Defendant Leiter stated that "thinking that the constitution is somehow going to allow her church to accept money for sex, that is a fraud perpetrated on [the] court."  Plaintiff claims Defendant Sammons compared Plaintiff and her temple community's practice of "donate when and if you want to after ceremony" to having dinner at a restaurant and then not paying after eating.

Plaintiff alleges that during jury selection, more than 400 potential jurors were called, and dozens who knew of the case and said they could not be impartial were

1   dismissed.  Plaintiff asserts that at a press conference, Defendant Montgomery and the
2   other prosecutors, "against their own ethical rules, condemned [Plaintiff] and the full
3   spectrum energy healing proudly."  Plaintiff claims the prosecutors "always refused to
4   negotiate with [Plaintiff] and her community."

5          Plaintiff alleges that Defendant Cutrer told her that he and Defendant Van Wie were
6   "the high priest and priestess in the temple of justice.  Our temple is higher than your
7   temple."  Defendant Cutrer told Plaintiff that she "need[ed] to accept [a] plea."  Plaintiff
8   claims Defendant Cutrer also "refused to defend [Plaintiff's] temple language," saying that
9   Arizona juries would not "accept her religious 'what would Jesus do?' soul-full approach
10  to whole body healing."

11         As her injury, Plaintiff alleges that prosecutors were allowed to "disregard the
12  Temple's extensive public website, undercover police recordings and the expert witness
13  testimony which delineated sacred sexual healing traditions and secular sex work."
14  Plaintiff asserts that Defendant Montgomery and his prosecutorial team filed a sentencing
15  memorandum asking that Plaintiff be sentenced to consecutive terms of imprisonment,
16  rather than concurrent, so that she would ultimately be sentenced to 70+ years in prison.
17  Plaintiff contends the prosecutors had "pre-existing bias" and never allowed her to "prove
18  her sincerity" or "prove financial stewardship in a traditional non-profit organization."

19         In Count II, Plaintiff alleges that she was "denied access to" more than 350 statutory
20  laws designed to protect minority faith healers, ministers/spiritual advisors, religious
21  schools, and houses of worship from secular or government interference.  Plaintiff asserts
22  that she and her community were "denied religious standing" and access to any "path to
23  obtaining religious standing."  Plaintiff claims Defendants' "personal bias" impaired their
24  ability to act as ministers of justice and work with Plaintiff's community for resolution,
25  thereby "destroying one of the largest female-led faith communities" in the United States.

26         Plaintiff alleges that during her trial, non-party Judge Stephens instructed jurors to
27  "ignore constitutional implications, including a strongly worded admonition to disregard
28  [Plaintiff's] religion as they began deliberations."  Plaintiff claims Judge Stephens

1    repeatedly admonished Plaintiff and defense witnesses to "remember that religion had no

2    place in the trial, except to explain 'mindset and intention' during her time as Mother

3    Priestess as the Phoenix Goddess Temple." Plaintiff asserts she was "allowed to use a tiny

4    portion of her genuine religious beliefs during trial, merely to inform the jury of her

5    'mindset.'"

6          As her injury, Plaintiff claims the trial court ignored as irrelevant Plaintiff's

7    "authenticity" and her "life affirming mission to uplift feminine wisdom." Plaintiff alleges

8    that her family produced more than 40 letters regarding her character, but the letters "meant

9    nothing in court," and the prosecutor declared Plaintiff's religion was "fraudulent."

10   Plaintiff asserts she was denied "religious defenses" because the majority of people would

11   not, at face value, understand Tantra or God-As-Mother.

12         In Count III, Plaintiff alleges that she was denied equal protection because of her

13   religious beliefs. She claims she was denied "religious defenses" at her criminal trial and

14   throughout her appeals in state court. Plaintiff asserts that she made a comparison between

15   her "covenant with Goddess" and a Jewish Bris ceremony and contended her covenant was

16   "equally valid, ancient and true." Plaintiff alleges Defendant Leiter "laughed and said he

17   knew [Plaintiff] thought it was the same thing, but it isn't." Plaintiff asserts she filed

18   notices that she and other temple healers were being treated differently under the law than

19   adult entertainers, who perform "sexual conduct" for a "fee arrangement" for entertainment

20   purposes, which is what Plaintiff was alleged to have done during the ceremonies at the

21   Phoenix Goddess Temple and Sedona School of Temple Arts. Plaintiff argued that

22   "Arizona allows sex for money, in a for-profit entertainment model, but will not allow

23   donations to a non-profit for education and healing."

24         As her injury Plaintiff claims Defendants' "attack on and destruction of the Arizona

25   healing temples" was "unjust, unwarranted and denied thousands of citizens their choice

26   of a house of worship, study and healing. Plaintiff alleges that five facilities in two cities

27   were lost, two schools of training and ordination were closed to hundreds, if not thousands,

28   of credentialed, principled community-accountable healers, who are prevented from full

1   spectrum healing and holy anointing.  As a result, "the work of sacred sexuality is still

2   underground, and still hounded as secular prostitution."  "Thousands have lost healing

3   opportunities, and temple-schools and their hands-on healers have lost millions in offerings

4   of support."

5   **IV.     Failure to State a Claim**

6           **A.     Defendant State of Arizona**

7           Under the Eleventh Amendment to the Constitution of the United States, a state or

8   arm of the state may not be sued in federal court without its consent.  *Pennhurst State Sch.*

9   *& Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Taylor v. List*, 880 F.2d 1040, 1045 (9th

10  Cir. 1989).  Furthermore, "a state is not a 'person' for purposes of section 1983."  *Gilbreath*

11  *v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) (citation omitted).  The State

12  of Arizona is not subject to suit under § 1983.  Accordingly, Defendant State of Arizona

13  will be dismissed.

14          **B.     Defendants Maricopa County and City of Phoenix**

15          "A municipality may not be sued under § 1983 solely because an injury was inflicted

16  by its employees or agents."  *Long v. County of L.A.,* 442 F.3d 1178, 1185 (9th Cir. 2006).

17  The actions of individuals may support municipal liability only if the employees were

18  acting pursuant to an official policy or custom of the municipality.  *Botello v. Gammick*,

19  413 F.3d 971, 978-79 (9th Cir. 2005).  A § 1983 claim against a municipal defendant

20  "cannot succeed as a matter of law" unless a plaintiff: (1) contends that the municipal

21  defendant maintains a policy or custom pertinent to the plaintiff's alleged injury; and

22  (2) explains how such policy or custom caused the plaintiff's injury.  *Sadoski v. Mosley*,

23  435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant

24  to Fed. R. Civ. P. 12(b)(6)).  Plaintiff has failed to allege facts to support that Defendants

25  Maricopa County and City of Phoenix maintained a specific policy or custom that resulted

26  in a violation of Plaintiff's federal constitutional rights and has failed to explain how his

27  injuries were caused by any municipal policy or custom.  Thus, the Court will dismiss

28  without prejudice Defendants Maricopa County and City of Phoenix.

1    **C.    Defendants Montgomery, Leiter, Sammons, Van Wie, and Browder**

2    Prosecutors are absolutely immune from liability for damages under § 1983 for their

3    conduct in "initiating a prosecution and in presenting the State's case" insofar as that

4    conduct is "intimately associated with the judicial phase of the criminal process." *Buckley*

5    *v. Fitzsimmons*, 509 U.S. 259, 270 (1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-

6    31 (1976)).   Immunity even extends to prosecutors for "eliciting false or defamatory

7    testimony from witnesses or for making false or defamatory statements during, and related

8    to, judicial proceedings."  *Buckley*, 509 U.S. at 270; *see also Broam v. Bogan*, 320 F.3d

9    1023, 1029-30 (9th Cir. 2003) (prosecutor absolutely immune from liability for failure to

10   investigate the accusations against a defendant before filing charges; for knowingly using

11   false testimony at trial; and for deciding not to preserve or turn over exculpatory material

12   before trial, during trial, or after conviction); *Roe v. City & County of S.F.,* 109 F.3d 578,

13   583-84 (9th Cir. 1997) (absolute immunity for decision to prosecute or not to prosecute

14   and for professional evaluation of a witness and evidence assembled by the police).

15   Plaintiff's claims against Defendants Montgomery, Leiter, Sammons, Van Wie, and

16   Browder are based on their roles as prosecutors in her criminal proceeding.  Thus, these

17   Defendants are absolutely immune from liability for damages and will therefore be

18   dismissed.

19   **D.    Defendant Cutrer**

20   A prerequisite for any relief under 42 U.S.C. § 1983 is a showing that the defendant

21   has acted under the color of state law.  An attorney representing a criminal defendant does

22   not act under color of state law.  *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981);

23   *see also Szijarto v. Legeman*, 466 F.2d 864, 864 (9th Cir. 1972) (per curiam) ("[A]n

24   attorney, whether retained or appointed, does not act 'under color of' state law.").

25   Defendant Cutrer was Plaintiff's court-appointed defense attorney in her criminal

26   proceeding and therefore did not act under color of state law.  Thus, the Court will dismiss

27   Defendant Cutrer.

28   . . . .

1  **E.     Claims for Damages Barred by *Heck***

2       As the Court informed Plaintiff in the January 14, 2021 Order, a claim for damages

3  cannot be brought under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would

4  necessarily imply the invalidity of [her] conviction or sentence," unless the plaintiff

5  demonstrates that the conviction or sentence has previously been reversed, expunged, or

6  otherwise invalidated.  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  Plaintiff's claims

7  that she was maliciously prosecuted and that her First and Fourteenth Amendment rights

8  were violated in her criminal trial imply the invalidity of her convictions.  Plaintiff has not

9  shown that her convictions have been reversed, expunged, or otherwise invalidated.  Thus,

10 her claims for money damages have not accrued and are therefore barred by *Heck*.

11 **IT IS ORDERED:**

12      (1)     The Complaint (Doc. 6) is **dismissed** for failure to state a claim pursuant to

13 28 U.S.C. § 1915A(b)(1), and the Clerk of Court must enter judgment accordingly.

14      (2)     The docket shall reflect that the Court, pursuant to 28 U.S.C. § 1915(a)(3)

15 and Federal Rules of Appellate Procedure 24(a)(3)(A), has considered whether an appeal

16 of this decision would be taken in good faith and certifies that an appeal would not be taken

17 in good faith for the reasons stated in the Order and because there is no arguable factual or

18 legal basis for an appeal.

19      Dated this 18th day of February, 2021.

20

21      *Michael T. Liburdi*

22      Michael T. Liburdi
        United States District Judge
23

24

25

26

27

28